IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAVID ROBERT BENTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3403 |
| | ) | |
| BRENT FISCHER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff, incarcerated in the Illinois Department of Corrections, pursues claims for deliberate indifference to his serious medical needs regarding a fracture to his right hand.  He sued more than 37 Defendants, nine of whom were dismissed for failure to state a claim against them.  Twenty-eight Defendants remain, all of whom have moved for summary judgment.  Plaintiff also moves for summary judgment.

The Court concludes that Plaintiff has not presented enough evidence for a reasonable jury to find for Plaintiff and against 19 of

the 28 remaining Defendants.  A trial will be set on the claims

against the remaining nine Defendants.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).   A movant may demonstrate the absence of a material

dispute through specific cites to admissible evidence, or by showing

that the nonmovant "cannot produce admissible evidence to

support the [material]  fact."  Fed. R. Civ. P. 56(c)(B).  If the movant

clears this hurdle, the nonmovant may not simply rest on his or her

allegations in the complaint, but instead must point to admissible

evidence in the record to show that a genuine dispute exists.  Id.;

Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).

"In a § 1983 case, the plaintiff bears the burden of proof on the

constitutional deprivation that underlies the claim, and thus must

come forward with sufficient evidence to create genuine issues of

material fact to avoid summary judgment."  McAllister v. Price, 615

F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the

light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. <u>Id.</u>

## FACTS

The Court sets forth these facts for purposes of this order only. Plaintiff did not file responses to Defendants' motions for summary judgment. However, Plaintiff did file his own motions for summary judgment, which already set forth Plaintiff's version of events.

Plaintiff was detained in the Adams County Jail beginning in October 2008. On October 1, 2009, a jury found Plaintiff guilty on of multiple counts of aggravated arson and murder. (10/1/09 Order, 184-2, p. 66.)

On October 31, 2009, while still incarcerated in the Adams County Jail, Plaintiff injured his right hand. Plaintiff maintains that Defendant Scott Smith, an officer at the jail, struck Plaintiff's hand through the cell bars with some sort of wand or baton that is routinely carried by the officers during their rounds. Plaintiff testified in his deposition that he was sleeping at the time, his

hands over his head and partly resting on the bars of the cell. (Pl.'s Dep. pp. 11-15.) According to Plaintiff, Officer Smith reached through the bars and struck Plaintiff's right hand for no reason. <u>Id.</u>

However, Defendants have evidence that Plaintiff injured his hand himself by striking a wall. (Medical request form, 184-2, p. 8; 10/31/09 occurrence report, d/e 184-2, p. 71.) Defendant Officer Robbins occurrence report from October 31, 2009 states in part:

> On the above date and time I was walking past Section 2 Cell 3 conducting a security check. Inmate Bentz asked, "John can I talk with you" adding "I need my hand set, I think I broke it." I stopped and Bentz stuck his right hand through the bars. Bentz's hand was swollen from the right side of the ring finger back to almost the top of the wrist. I asked Bentz how this happened and he replied, "I hit the wall." I asked Bentz why he hit the wall and he replied, "Because I was mad when I got up this morning." Bentz was given a bag of ice and a medical request form.

> Similarly, Defendant Nurse Loos' 11/3/09 response to

Plaintiff's request for medical care states:

> Rt hand swollen-3rd and 4th fingers swollen noted some discoloration. State[s] hit hand on metal in cell. . . .

Plaintiff denies telling Officer Robbins that Plaintiff injured his own hand. (Pl.'s Dep. pp. 18-19.) An inference arises from the record

that Plaintiff did not tell anyone that Officer Smith had struck

Plaintiff's hand until after Plaintiff was transferred from the jail to

the Illinois Department of Corrections.

Plaintiff submitted a medical request form the day of the

injury and another on November 3, 2014.  Plaintiff's November 3rd

medical request stated:

> This is the 2nd god damn mother fucking Request form I
> have put in for my mother fucking Broken hand and
> this is the 3rd day the [illegible] COUNTY JAIL has
> Refused me medical attention!

(Medical request form, d/e 184-2, p. 8.)  That day, November 3,

2009, Defendant Loos, a licensed practical nurse, saw Plaintiff and

noted that his third and fourth fingers were swollen, with the

fingers mobile except for adduction and abduction.  She advised

Plaintiff to apply ice.

On November 6, 2009, when Plaintiff reported continued

swelling and only minimal improvement, Defendant Loos consulted

Defendant Nancy Ogle, a certified nurse practitioner.  During the

relevant time period, Defendant Ogle was employed by Primary Care

Physicians.  Her duties included coordinating medical care for the

Adams County Jail inmates.  (Ogle Aff. para. 2.)  Defendant Ogle,

over the phone, ordered Tylenol and Ibuprofen for Plaintiff and ordered x-rays of Plaintiff's right hand and wrist. Defendant Ogle also directed Plaintiff to keep his hand elevated and to apply ice. (11/6/09 physician's telephone order; nurse notes 11/3/09-11/12/09, medication log, d/e 184-2, pp. 4-5, 7; Ogle Aff. para. 4).

On November 6, 2009, Plaintiff received an x-ray of his right wrist which showed "a distracted, overlapped fracture of the fifth metacarpal shaft.[1] No fracture or dislocation is seen involving the wrist. The bone mineralization is good. The joint spaces are well maintained." The impression was a fifth metacarpal shaft fracture.

Pursuant to Nurse Practitioner Ogle's authorization, on November 16, 2009, Plaintiff was taken to see Steven Dement, a physician's assistant in the Orthopedics Department of the Quincy Medical Group. Defendant Dement reviewed the x-rays, radiologist report, and also performed a physical exam of Plaintiff's hand. Dement diagnosed Plaintiff with a right fifth metacarpal fracture with acceptable alignment. According to Dement, the standard treatment approach in cases like Plaintiff's is to immobilize the

---

[1] According to Merriam-Webster's online medical dictionary, "distraction" in the context of factures means "excessive separation (as from improper traction) of fracture fragments." MedlinePlus Medical Dictionary, a service of the U.S. National Library of Medicine, National Institutes of Health, www.nlm.nih.gov (last visited March 10, 2014).

hand with a splint to prevent the fracture from becoming displaced.

Dement avers that further diagnostic tests were not indicated

unless symptoms persist for more than three months. Dement

prescribed Plaintiff a splint which Plaintiff was to wear all the time,

except for situations where there was no risk of bumping Plaintiff's

hand. In Dement's opinion, Plaintiff's fracture was in stable

condition and was expected to heal properly without further

intervention. Dement also prescribed over the counter pain

medicine as needed. (Dement Aff. paras. 16-22.) Plaintiff testified

that he tried to wear the splint as much as possible and does not

recall if he bumped his hand at any point after receiving the splint.

(Pl.'s Dep. p. 22.) Dement also scheduled a follow-up appointment

on November 30, 2009, which Plaintiff did not receive. Plaintiff filed

no additional medical requests for care at the jail after his

November 16th visit with Defendant Dement.

Plaintiff testified in his deposition that he received pain

medicine only two or three times at the Adams County Jail, despite

the pain prescriptions. (Pl.'s Dep. pp. 20-21.) He testified in his

deposition that he never refused any pain medicine offered to him

at the jail. (Pl.'s Dep. pp. 59-60.) However, Defendants offer

affidavits that Plaintiff repeatedly refused pain medicine, attaching the inmate refusal forms corroborating those refusals on November 7, 8, 9, 10, 12, 13, 2009. (Inmate Refusal Forms, d/e 184-2, p. 16-23). One inmate refusal form dated 11-9-09 signed by Defendant Officer Curran states "David Bentz refused his meds and told me not to bother bringing him any more." Plaintiff stated in his deposition that the inmate refusal forms were fabricated. (Pl.'s Dep. pp. 60.)[2]

Plaintiff does not mention the inmate refusal forms in his motions for summary judgment. Instead, Plaintiff asserts that his requests for pain medicine were ignored because Defendants insisted that he pay for the medicine. (Pl.'s Response p. 5, d/e 168)("Plaintiff's prescription and numerous request[s] for pain treatment was ignored by the Defendants' stating to Plaintiff he had to pay for it.") Requiring an inmate to pay for medical care or treatment, if the inmate has funds available, is not unconstitutional. *See* Poole v. Isaacs, 703 F.3d 1024, 1026 (7th Cir.

---

[2] Q: So all of these officers, one, two, three, four, five, six, seven, just made this [the inmate refusal form] up? A: Yep. (Pl.'s Dep. pp. 60-61.) Plaintiff is advised that monetary sanctions may be imposed on him after the trial if the Court finds that Plaintiff's action was so lacking in factual merit that Plaintiff brought this action for purposes of harassment, knowing that his allegations lacked evidentiary support. Fed. Rule Civ. P. 11(b). If sanctions are imposed, Plaintiff may be required to post bond before proceeding in future civil cases before this Court.

2012)("the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care.")

On December 3, 2009, Plaintiff was sentenced to life without parole. (12/3/09 Adams County Judgment, 184-2.)  On December 10, 2014, Plaintiff was transferred to Graham Correctional Center. Plaintiff contends that his splint was confiscated by officers on Plaintiff's arrival at Graham Correctional Center.  The intake notes state that Plaintiff denied any pain, trauma, or injury and do not mention the splint.  (IDOC Recs. p. 3.)  Plaintiff contends that he saw Defendant Igor Podebryi, a physician's assistant, on December 11, 2009 and told Defendant Podebryi about his hand fracture, confiscated splint, and hand pain.  (Pl.'s Mot. Sum. J., d/e 179, p. 8.)  Defendant Podebryi does not recollect Plaintiff mentioning anything about a hand fracture.  Podebryi avers that he would have noted the reported hand fracture in Plaintiff's record if Plaintiff had made that complaint.  (Podebryi's Aff. ¶ 6.)  Defendant Podebryi avers that he conducted a physical examination of Plaintiff on December 16, 2014, which was normal.  (IDOC Recs. p. 4.)  Plaintiff

asserts that he submitted several medical request slips in December about his hand and filed a grievance, to no avail.

On January 4, 2010, Defendant Dr. Kayira saw Plaintiff. Dr. Kayira's notes reflect that Plaintiff could move his fingers well but that he had a possible finger fracture. (1/4/10 progress note, d/e 179-2.) Plaintiff contends that Dr. Kayira told Plaintiff that he needed to see a bone specialist; Dr. Kayira denies saying this. Dr. Kayira ordered an x-ray. The x-ray report was received on January 12, 2010 and showed "a comminuted[3] fracture at the proximal end of the fifth metacarpal with overlap of the fracture fragments." (1/12/10 x-ray report, d/e 184-11, p. 13.) The impression was a "partially healed subacute fracture of the fifth metacarpal." (IDOC recs p. 69.) Dr. Kayira avers, and Plaintiff does not dispute, that Dr. Kayira had no opportunity to see or evaluate Plaintiff after Plaintiff's x-ray. (Dr. Kayira's Aff. ¶ 13.) Plaintiff was transferred from Graham Correctional Center to Stateville Correctional Center on January 6, 2010, two days after Plaintiff's exam by Dr. Kayira. However, Plaintiff faults Dr. Kayira for not prescribing pain

---

[3] The term comminuted describes "a fracture in which the bone is splintered or crushed into numerous pieces." MedlinePlus Medical Dictionary, a service of the U.S. National Library of Medicine, National Institutes of Health, www.nlm.nih.gov (last visited March 10, 2014).

medicine and not referring Plaintiff to a specialist. Dr. Kayira avers that Plaintiff did not exhibit or express discomfort to the extent that pain medicine was needed. (Id. para. 12.)

On January 6, 2010, Plaintiff was transferred from Graham Correctional Center to Stateville Correctional Center. Plaintiff contends that he repeatedly submitted medical requests and grievances about his hand throughout his stay at Stateville, which lasted about one and one-half years, until July 27, 2011.

Defendant Williams, a physician's assistant at Stateville Correctional Center, was scheduled to see Plaintiff for his hand complaints on February 25 or 26, 2010, but the appointment was rescheduled to March 5, 2010, for lack of staff. (2/26/10 progress notes, 179-2, p. 13.) Defendant Williams arranged to have the x-rays from Graham Correctional Center faxed over and also ordered additional x-rays.

Plaintiff saw Dr. Zhang Liping (not a Defendant) on March 5, 2010, but the x-rays had not yet been done. (3/5/10 progress note, 179-2, p. 13.) Dr. Zhang prescribed a fifteen day supply of Ibuprofen.

The x-rays ordered by Defendant Williams, like the other x-rays, again showed a fracture of Plaintiff's fifth metacarpal—"a displaced fracture in the shaft of his fifth metacarpal with apparent early callus."[4]  (Williams Aff. para. 6.)  However, on May 14, 2010, Defendant Williams wrote in the medical records that Plaintiff had a well-healed fracture.  (5/4/10 progress note, 179-2, p. 14.)  Defendant Williams prescribed ibuprofen and referred Plaintiff to Defendant Ghosh, a prison doctor, for a second opinion.  (5/14/10 progress note, 179-2, p. 14.)  According to Plaintiff, Williams said during this visit that Plaintiff's fracture had healed incorrectly but that surgery would not be performed because of Plaintiff's life sentence.  (Pl.'s Dep. pp. 53-54.)  Defendant Williams denies saying this and denies making any treatment decisions based on Plaintiff's sentence.  (Williams Aff. para. 8.)

Defendants have evidence that, following the May 14th visit with Defendant Williams, Plaintiff did not show or refused to wait for two scheduled appointments with Defendant Dr. Ghosh in June 2010.  Plaintiff counters that officers refused to take him or that he

---

[4]According to dictionary cited in footnote 1, callus in this context would be "a mass of exudate and connective tissue that forms around a break in a bone and is converted into bone in the healing of the break."  Exudate is "the material composed of serum, fibrin, and white blood cells that escapes from blood vessels into a superficial lesion or area of inflammation."

could not wait the many hours required because of his painful shackles.  Plaintiff also contends that Dr. Ghosh refused to address Plaintiff's hand complaints when Plaintiff did see Dr. Ghosh on September 3, 2010.

Dr. Ghosh saw Plaintiff on October 28, 2010 and observed that Plaintiff could not oppose his right ring finger to his right thumb.  Dr. Ghosh ordered an MRI to determine whether a surgical consult was necessary.  (Ghosh Aff. para. 15.)  The MRI, conducted on December 30, 2010 found:

FINDINGS:

*          *          *

Mild deformity and trabecular thickening of the fifth metacarpal shaft is seen, with mild bone marrow edema. There is irregularity at the junction of the fourth and fifth metacarpal bases, with prominent boney excrescence. There is no significant soft tissue edema.  The visualized flexor and extensor tendons are intact.  No significant joint effusion is identified.  There is no evidence of dislocation.

IMPRESSION:

1.  Irregularity with mild bone marrow edema of the fifth metacarpal shaft suggests acute on chronic injury.

2.  Irregularity at the junction of the fourth and fifth metacarpal bases with boney excrescence may be related to prior injury and pseudoarthrosis.

3.  Correlation with radiographs is advised.

(MRI report, d/e 184-11, p. 16.)

According to Dr. Ghosh, Plaintiff did not show for his January 21, 2011 appointment to discuss the MRI.  Plaintiff did see Dr. Ghosh on February 24, 2011, during Plaintiff's visit at the Hepatitis Clinic.  Dr. Ghosh noted Plaintiff's inability to make a fist.  According to Plaintiff, Dr. Ghosh told Plaintiff that his hand was not broken and that he needed to see a physical therapist for strengthening exercises.  (Pl.'s Mot. Sum. J. d/e 179, p. 6, para. 39.)

On March 22, 2011, Dr. Ghosh prescribed a medical permit for Plaintiff for front cuffing, medical restraints, and a double mattress.  According to Plaintiff, Dr. Ghosh reversed course on May 3, 2011, and told Plaintiff he needed to see a hand specialist, not a physical therapist.  (Pl.'s Mot. Sum. J., d/e 179, p. 6, para. 41; 5/3/11 grievance, d/e 179, p. 24.) Plaintiff was transferred from Stateville Correctional Center to Pontiac Correctional Center on July 27, 2011, where Plaintiff's

special cuffing and bed permits were revoked as part of the intake policy.

Defendant Dr. Tilden saw Plaintiff at Pontiac Correctional Center on August 28, 2011. In Dr. Tilden's opinion, Plaintiff's hand fracture was old and sufficiently healed, with sufficient range of motion and no swelling. Dr. Tilden concluded that special restraints of front cuffing permits were not necessary. (Tilden Aff. paras. 5-6.) Plaintiff was transferred from Pontiac Correctional Center to Menard Correctional Center on October 28, 2011. Plaintiff's care at Menard is not a part of this lawsuit.

## ANALYSIS

Deliberate indifference to an inmate's or a pretrial detainee's objectively serious medical need violates the Constitution. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). A condition can be considered serious if, without treatment, the

plaintiff suffered "'further significant injury or unnecessary and wanton infliction of pain.'" <u>Arnett v. Webster</u>, 658 F.3d 742, 751 (7th Cir.2011)(quoted cite omitted).  Deliberate indifference is not negligence or even gross negligence. <u>Chapman</u>, 241 F.3d at 845 (citation omitted).  Deliberate indifference is the conscious disregard, in an intentional or "'essentially . . . criminal[ly] reckless manner,'" of a subjectively known risk of substantial harm.  <u>McGee v. Adams</u>, 721 F.3d 474, 480 (7th Cir. 2013); <u>Arnett v. Webster</u>, 658 F.3d 742, 751 (7th Cir. 2011); <u>Hayes v. Snyder</u>, 546 F.3d 516, 522 (7th Cir. 2008).  Deliberate indifference to "prolonged, unnecessary pain" also violates the Eighth Amendment.  <u>Smith v. Knox County Jail</u>, 666 F.3d 1037, 1040 (7th Cir. 2012)(internal and quoted cites omitted).

**I.  Adams County Defendants:  Summary judgment is denied as to Defendants Smith, Robbins, Loos, and Ogle.  Summary judgment is granted to the other Adams County Defendants.**

Eighteen of the Adams County Defendants provide evidence that they were never aware of Plaintiff's injury or symptoms—Defendants Fischer, Downs, Smith, Harmon, Frankel, Hathaway, Graham, Schrage, Doellman, Boden, Wietholder, Venvertloh, Coleman, Wardlow, Trautvetter, Bodiford, Yates and Curran.

Plaintiff does not offer evidence to dispute these averments. Plaintiff's vague conclusory assertion that all the Defendants denied him medical care and pain medicine is not enough for a reasonable jury to find that these 18 Defendants personally knew that Plaintiff had a serious, unmet medical need for medical treatment or pain medicine, much less that they were deliberately indifferent to those needs. Plaintiff does not dispute that he filed no medical requests or other grievances about his alleged lack of prescribed pain medicine. Plaintiff argues in his brief that the jail Defendants ignored his requests for pain medicine because they would not give it to him unless he paid. As discussed above, requiring Plaintiff to pay what he could for the medicine did not violate his Constitutional rights.

Plaintiff's claim against Defendant Officer Scott Smith for excessive force, assault, and battery survives summary judgment. The jury has to decide whom to believe on this claim, not the Court. A claim for deliberate indifference to Plaintiff's serious medical needs also arises against Defendant Smith. If Defendant Smith did break Plaintiff's hand or finger, a reasonable jury could find that

Defendant Smith would have known that Plaintiff needed to be taken for immediate medical care.

Also surviving summary judgment is Plaintiff's claim for denial or delay of medical care against Defendant Officer Robbins, Nurse Loos, and Nurse Practitioner Ogle. Officer Robbins arguably knew Plaintiff had broken his hand because Officer Robbins saw Plaintiff's hand on the day of the injury and told Plaintiff to submit a health care request. Plaintiff did submit a request that day but did not see Nurse Loos until three days later. Officer Robbins may not have had anything to do with this delay, but the reason for the delay is not in the record. *See, e.g.,* <u>Grieveson v. Anderson</u>, 538 F.3d 763, 779 (7th Cir.2008)(one and one-half day delay, broken nose). Similarly, Defendant Loos does not explain the reason for the delay in her seeing Plaintiff or for the delay in contacting Defendant Ogle.

An inference of deliberate indifference cannot be ruled out against Defendant Ogle. Defendant Ogle ordered pain relief and x-rays the day she learned of the injury, but she did not personally examine Plaintiff, even though she was in charge of coordinating care at the jail. Further, the x-rays done on November 6 showed a

fracture, but Plaintiff was not taken to the orthopedic physician's assistant until ten days later. That delay is also not explained. And, no explanation was given regarding why Plaintiff was not taken to his follow-up appointment even though the appointment had been scheduled by Defendant Dement.

## II. IDOC Defendants: Summary Judgment is denied to the remaining IDOC Defendants—Igor Podebryi, Parthasarath Ghosh, Latanya Williams, Francis Kayira, and Andrew Tilden.

The Court cannot rule out a reasonable inference of deliberate indifference to a serious medical need against the Defendants who treated Plaintiff at Graham, Stateville, and Pontiac Correctional Centers. Looking at the case in the light most favorable to Plaintiff, Plaintiff had a serious medical need for his splint, but his splint was confiscated at Graham Correctional Center. Plaintiff avers that he told Defendant Podebryi about his fracture, pain, and splint, and that Defendant Podebryi disregarded the complaints, not even recording the complaints in the medical records. Defendant Podebryi denies this, but the denial only demonstrates a dispute for the jury to decide.

Defendant Kayira's interaction with Plaintiff was very limited. Plaintiff was transferred out of Graham Correctional Center just two

days after Dr. Kayira saw Plaintiff and ordered x-rays. However, the Court cannot rule out a reasonable inference the Dr. Kayira was aware that Plaintiff's hand was not healing properly. Whether Dr. Kayira would have had any authority to advise the treating professionals at Stateville of Plaintiff's problem is not in the record. Additionally, Plaintiff avers that Dr. Kayira refused to prescribe any pain medicine.

The longest denial of treatment occurred while Plaintiff was in the Stateville Correctional Center—about one and one-half years. A reasonable inference arises that Plaintiff's hand was still fractured and eventually healed incorrectly during that time period. Defendants contend that Plaintiff voluntarily failed to appear for scheduled appointments, but that is a disputed fact. A reasonable inference arises that the Defendants at Stateville Correctional Center failed to take any action though they knew Plaintiff's hand was still fractured.

Lastly, Dr. Tilden at Pontiac Correctional Center also failed to take any necessary action or prescribe pain medicine if Plaintiff's version is believed. Dr. Tilden also revoked Plaintiff's special permits. A reasonable jury concluding that Plaintiff's hand had

healed improperly might also reasonably conclude that these actions amounted to turning a blind eye to the problem.

In short, the Court's inquiry at the summary judgment stage is limited. The case can be taken from the jury only if no reasonable jury could find for Plaintiff. Accepting Plaintiff's version as true, his pleas for adequate treatment for his broken hand were ignored. Though diagnostic tests were performed, x-rays and an MRI, no action was taken in response to the findings of those tests.

IT IS ORDERED:

1) The motion for summary judgment by the Adams County Defendants is granted in part and denied in part (d/e 192). The motion is granted as to Defendants Fischer, Downs, Smith, Harmon, Frankel, Hathaway, Graham, Schrage, Doellman, Boden, Wietholder, Venvertloh, Coleman, Wardlow, Trautvetter, Bodiford, Yates and Curran. The motion is denied as to Defendants Smith, Robbins, Loos, and Ogle.

2) The motion for summary judgment by Defendants Ghosh, Kayira, Podebryi, Tilden, and Williams is denied (d/e 184).

3) The motion for summary judgment by Defendant Colleen Franklin is granted (d/e 190). Plaintiff has not responded to

Franklin's evidence which shows that her only involvement was denying Plaintiff's grievances.  Denial of grievances is not a constitutional violation.  *See* <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430  (7th Cir. 1996)("a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Further, Franklin was entitled to rely on the professional judgment of the treating doctors.  <u>Greeno v. Daley</u>, 414 F.3d 645, 656 (7th Cir. 2005)("If a prisoner is under the care of medical experts... a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'")(quoted cite omitted).

4)  The motion for summary judgment by Defendant Dement is granted (d/e 189).  Plaintiff has filed no response, and Defendant Dement's evidence shows no basis for liability against Dement under 42 U.S.C. § 1983 because Dement is not a state actor. <u>Rodriguez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 827 (7th Cir. 2009).  Defendant Dement is a physician's assistant privately employed by Quincy Medical Group.  Quincy Medical Group has no contractual arrangement with the Adams County Jail.  (Affidavit of Tammy Anderson, 189-3.)

5) Plaintiff's motions for summary judgment are denied (d/e's 168, 179).

6) Plaintiff's disciplinary history in the Adams County Jail and life sentence weigh in favor of having Plaintiff appear for the final pretrial conference and trial by video conference. (Adams County Jail incident reports, Ex. B to IDOC Defs.' Motion for Sum. J.).

7) A final pretrial conference is scheduled for July 28, 2014 at 9:30 a.m. Plaintiff shall appear by video conference. Defense counsel shall appear in person. The trial date will be chosen at the final pretrial conference.

8) An agreed, proposed final pretrial order is due July 14, 2014.

9) Motions in limine are due July 14, 2014, with responses thereto due July 21, 2014.

10) The Court will send out proposed jury instructions and voir dire for discussion at the final pretrial conference. Additional or alternate instructions and additional voir dire questions are due July 21, 2014.

11) Plaintiff and Defense counsel must bring their exhibits, marked, to the final pretrial conference. Objections

to exhibits are due July 21, 2014.  Objections must attach the exhibit at issue.

12)  The jury selection and trial are scheduled for August 26, 2014, at 9:00 a.m.

13)  **The clerk is directed to send Plaintiff a copy of Federal Rule of Civil Procedure 11.**

14)  **The clerk is directed to terminate Defendants Fischer, Downs, Harmon, Frankel, Hathaway, Graham, Schrage, Doellman, Boden, Wietholder, Venvertloh, Coleman, Wardlow, Trautvetter, Bodiford, Yates, Curran, Dement, and Franklin.**

15)  **The clerk is directed to issue a video writ to secure Plaintiff's presence at the final pretrial conference.**

ENTER: March 21, 2014

FOR THE COURT:

**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE